UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

* * * * * * * * * * * * * * * * * * *

REPORT AND RECOMMENDATION

* * * * * * * * * * * * * * * * * * *

United States of America,

        Plaintiff,

vs.

Showy Shalette Johnson,

        Defendant.        Crim. No. 09-343(02) (DWF/RLE)

* * * * * * * * * * * * * * * * * *

Introduction

This matter came before the undersigned United States Magistrate Judge pursuant to a general assignment, made in accordance with the provisions of Title 28 U.S.C. §636(b)(1)(B), upon the following Motions of the Defendant Showy Shalette Johnson ("Johnson"):

    1.    Johnson's Motion to Dismiss for Pre-Indictment Delay; and

    2.    Johnson's Motion for Suppression of Confessions or Statements in the Nature of Confessions.

A Hearing on the Motions was conducted on February 4, 2010, at which time, Johnson appeared personally, and by Deborah Ellis, Esq., and the Government appeared by Clifford B. Wardlaw, Assistant United States Attorney.

For reasons which follow, we recommend that Johnson's Motion to Dismiss, and her Motion to Suppress her statements to law enforcement, be denied.

## II. Factual and Procedural Background

Johnson is charged, in a Superseding Indictment, with one Count of Child Endangerment, in violation of Title 18 U.S.C. §§1151, 1153(a), and 1153(b), and of Minnesota Statutes Section 609.378, Subdivision 1(2)(b)(1). The offense is alleged to have occurred between on or about September 23, 2008, and November 3, 2008, within the exterior boundaries of the Red Lake Indian Reservation. As pertinent to the charges against Johnson, as well as her Pretrial Motions, the operative facts can be briefly summarized.[1]

---

[2]Rule 12(d), Federal Rules of Criminal Procedure, provides that "[w]hen factual issues are involved in deciding a motion, the court must state its essential findings on the record." As augmented by our recitation of factual findings in our "Discussion," the essential factual findings, that are required by the Recommendations we make, are contained in this segment of our Opinion. Of course, these factual findings are preliminary in nature, are confined solely to the Motions before the Court, and are subject to such future modification as the subsequent development of the facts and law may require. See, United States v.
(continued...)

At the time of the Hearing, the Government elicited the testimony of Timothy D. Ball ("Ball"), who is a Special Agent with the Federal Bureau of Investigation ("FBI"), and who is assigned to the FBI's Resident Agency in Bemidji, Minnesota. As recounted by Ball, on November 5, 2008, Ball and Michael J. Iverson ("Iverson"), who is another FBI Special Agent, interviewed Johnson at the Juvenile Detention Center on the Red Lake Reservation. According to Ball, Johnson had been contacted by the Red Lake Police Department to request that she come to the Juvenile Center in order to answer some questions by the FBI, but Ball did not know who, in particular, had contacted Johnson. Ball believed that Johnson was met in the Center's parking lot, as he had some recollection of her traveling to the Center with her husband, and co-Defendant, Charles William Prentice, Jr. ("Prentice").

Ball could not recall, however, who let Johnson into the Center, as the outside door to the premises was locked. Ball testified that the Center was newly constructed, and had not been occupied to that date, and was not occupied by others at the time of the interview. He and Iverson met with Johnson in a conference or class room, which was enclosed and, while Ball testified that the door to the room had a lock, he stated

---

(...continued)
Moore, 936 F.2d 287, 288-89 (6th Cir. 1991), cert. denied, 505 U.S. 1228 (1992); United States v. Prieto-Villa, 910 F.2d 601, 610 (9th Cir. 1990).

that the door was not locked, and that Johnson was free to leave, which she did at the close of the interview. According to Ball, Johnson was not provided with a Miranda warning, see, Miranda v. Arizona, 384 U.S. 436, 444 (1966), as she was not under arrest, although she had been told, several times during the course of the interview, that she did not have to speak with the Agents, and that she was free to leave. Johnson responded that she was willing to speak to the Agents if it would assist her daughter, who was the alleged victim of an assault that, assertedly, caused her serious bodily injuries.

Ball stated that he, and Iverson, were in civilian clothes, and that, while he was armed at the time, he did not draw his sidearm from its holster at any time during the course of the interview. He described Johnson as being emotionally upset, and he saw her crying as well, but he testified that she did not appear to be under the influence. He felt that Johnson was upset about the seventy-two (72) hour hold on her child. As noted, at the close of the interview, Johnson rose and left the building.

On cross examination, Ball testified that, after the interview on November 5, 2008, he undertook no other investigation with respect to the case, and he did not believe he had generated any reports other than his summary of the interview of Johnson and, perhaps, a summary of Prentice's interview, which was conducted on

the same day as Johnson's questioning. Ball testified that the interview of Johnson followed the FBI being notified of injuries to Johnson's daughter, but Ball could not remember the date on which the daughter is alleged to have been injured, although he stated that the FBI was contacted, by the Red Lake Police Department, on November 3, 2008. Ball also recalled that Prentice, and Johnson, arrived at the Juvenile Detention Center together.

As noted, Ball thought he recalled seeing Johnson in the parking lot, but he did not remember escorting her into the Center, and he thought that Brian Peterson, who is a Criminal Investigator with the Red Lake Police Department had let him into the Center, and he believed that someone would have unlocked the front door to allow Johnson's entrance. Ball did not remember who, after the interview, opened the door to allow Johnson to leave, but he thought that the officers had led her out.[2]

---

[2] Following the questioning of Ball concerning Johnson's interview, counsel for Prentice also requested, and was granted, the opportunity to question Ball concerning the interview of Prentice that Ball and Iverson had conducted on that same day. At an earlier Suppression Hearing concerning Prentice's Motion to Suppress the statements that he had made to law enforcement, Iverson testified to the FBI's interview of Prentice, and Prentice's counsel now wanted to question Ball since Ball had written the FBI Report summarizing Prentice's interview. After that questioning, counsel for Prentice advised that, while Prentice continued to challenge the legitimacy of Prentice's statement to the FBI, Prentice would not again be filing a Motion to Suppress, notwithstanding the filing of the Superseding Indictment.

Lastly, Johnson underscores that, although the interviews of Prentice, and herself, were completed on November 5, 2008, an Indictment was not returned as to Prentice until one (1) year later, on November 10, 2009, and a Superseding Indictment, containing the first criminal charge against her, was not filed until January 12, 2010. Through counsel, Johnson argues that the Government unreasonably delayed the Superseding Indictment against her in order to secure a tactical advantage, and to harass her, and she moves to dismiss the charges against her for that preindictment delay.

III. Discussion

Since they involve different issues, we separately address Johnson's Motion to Dismiss, and her Motion to Suppress.

    A.    Johnson's Motion to Dismiss.

        1.    Standard of Review. "[W]hile statutes of limitations provide the primary guarantee against delay prior to indictment or arrest, the due process clause of the Fifth Amendment does play a limited role in protecting against oppressive delay." United States v. Jackson, 446 F.3d 847, 849 (8th Cir. 2006), citing United States v. Brockman, 183 F.3d 891, 895 (8th Cir. 1999), cert. denied, 528 U.S. 1080 (2000). Here, Johnson concedes that her charges are not barred by any applicable

statute of limitations, so her Motion to Dismiss necessarily relies upon the Fifth Amendment.³ As our Court of Appeals explained, in United States v. Gladney, 474 F.3d 1027, 1030-31 (8th Cir. 2007)[emphasis in original]:

> The Fifth Amendment's Due Process Clause protects a criminal defendant against unreasonable pre-indictment delay. [United States v. Haskell, 468 F.3d 1064, 1070 (8th Cir. 2006)]. To prove a violation of his due process rights, [the defendant] must establish the delay resulted in actual and substantial prejudice to the presentation of the defense and the government intentionally delayed [the defendant's] indictment either to gain a tactical advantage or to harass [her]. Id. The court will inquire into the reasons for the delay **only** where actual prejudice has been established. United States v. Sturdy, 207 F.3d 448, 452 (8th Cir. 2000). To establish actual prejudice, a defendant must identify witnesses or documents lost during the delay period. Id. However, actual prejudice cannot be established by defendant's speculative or conclusory claims of possible prejudice as a result of the passage of time. Id. The defendant carries the burden to show the lost testimony or information is not available through other means. Id.

See also, United States v. Hance, 501 F.3d 900, 905-06 (8th Cir. 2007); United States v. Sturdy, 207 F.3d 448, 451-52 (8th Cir. 2000); United States v. Benshop, 138 F.3d 1229, 1232 (8th Cir. 1998).

---

³As the Court explained, in United States v. Jackson, 446 F.3d 847, 849 (8th Cir. 2006), "[t]wo provisions of the United States Constitution guard criminal defendants against unreasonable delay," the Fifth Amendment due process clause, and "the Sixth Amendment provides a right to a speedy trial in all criminal prosecutions, a protection that attaches to the earlier of arrest or indictment." Here, Johnson does not assert any Speedy Trial Act violation, and therefore, our analysis is confined to the Fifth Amendment's due process clause.

"As a result, a defendant must overcome a high hurdle when contending that a pre-indictment delay that does not violate the statute of limitations is violative of the due process clause." United States v. Jackson, supra at 849.

"Absent a showing that the government acted intentionally to harass or to gain a tactical advantage, no due process violation may be found," United States v. Benshop, supra at 1232-33, citing United States v. Stierwalt, 16 F.3d 282, 285 (8th Cir. 1994), and, "[i]f the defendant fails to establish actual prejudice, we need not assess the government's rationale for the delay." United States v. Sprouts, 282 F.3d 1037, 1041 (8th Cir. 2002), citing United States v. Sturdy, supra at 452.

  2. <u>Legal Analysis</u>. Johnson admits that no witnesses, or documents, have been lost, owing to the one (1) year or so delay in the filing of charges against her. Rather, she urges, in effect, that the delay in the filing of those charges lulled her into believing that neither she, nor her husband, would be charged, so that she did not undertake to plan and prepare a defense at an earlier time. While that argument might have some persuasive effect if true, counsel for the Government represented that the Government transmitted a target letter to Johnson, as well as to Prentice, in December of 2008, and shortly thereafter, transmitted a similar letter to Johnson's, and to Prentice's current defense counsel, which also included a copy of their respective

statements to the FBI. There was no lulling of Johnson into somnolence in this instance, and we find no actual, substantial prejudice that was attributable to any delay in the filing of charges against Johnson.

Even if we were empowered to examine the Government's explanation for any delay -- which we plainly are not, see, e.g., United States v. Sturdy, supra at 452 ("The court will inquire into the reasons for delay only where actual prejudice has been established."), citing United States v. Savage, 863 F.2d 595, 598 (8th Cir. 1988), cert. denied, 490 U.S. 1082 (1989) -- we find Johnson's argument, that the Government intended to harass her, or to gain some tactical advantage, unavailing. She argues that, given the nature of the Child Endangerment charges, the Government should have been seeking to return an Indictment against her promptly, so as to protect the child if, in fact, the Government thought her child was truly in jeopardy. However, given the availability of that argument, no advantage, strategic or otherwise, inures to the Government by any delay in the filing of charges, and we are presented with no evidence of actual prejudice, or any intent by the Government to gain a tactical advantage.

We simply have Johnson's speculation and conclusory accusations, that the Government is guilty of some unlawful delay, but such accusations are decidedly

insufficient. See, e.g., United States v. Hance, supra at 906 ("As we have noted before, '[s]peculative or conclusory claims alleging "possible" prejudice as a result of the passage of time are insufficient.'"), quoting United States v. Bartlett, 794 F.2d 1285, 1289-90 (8th Cir. 1986), cert. denied, 479 U.S. 934 (1986). Accordingly, we recommend that Johnson's Motion to Dismiss for Preindictment Delay be denied as without merit.[4]

B. Johnson's Motion to Suppress Her Statements to the FBI.

1. Standard of Review. Government agents are not required to administer Miranda warnings to everyone they question. See, Oregon v. Mathiason, 429 U.S. 492, 495 (1977). Rather, Miranda warnings are required for official interrogations where a person has been "'taken into custody or otherwise deprived of his freedom of action in any significant way.'" Stansbury v. California, 511 U.S. 318, 322 (1994), quoting Miranda v. Arizona, 384 U.S. 436, 444 (1966); United States v.

---

[4]Johnson relies on United States v. Rogers, 639 F.2d 438, 440 (8th Cir. 1981), for the proposition that "[a]n indictment may be dismissed for preindictment delay if it appears that the delay was unreasonable," but the case has not been cited by any Court, for that proposition, since 1984, and the Court expressly found, in Rogers, that the defendant had "failed to demonstrate any actual prejudice from the preindictment delay." Id. at 441. As our recitation of our Standard of Review reflects, we apply the currently applied principles of Eighth Circuit law, as that law is informed by prior precedent.

Helmel, 769 F.2d 1306, 1320 (8th Cir. 1985); Berkemer v. McCarty, 468 U.S. 420, 428-29 (1984). Once a suspect is in police custody and subject to interrogation, the suspect must be informed of his constitutional right to remain silent, and to be represented by legal counsel during questioning. See, Miranda v. Arizona, supra at 473; see also, Dormire v. Wilkinson, 249 F.3d 801, 803-804 (8th Cir. 2001), cert. denied, 534 U.S. 962 (2001).

"In determining whether an individual was in custody, a court must examine all of the circumstances surrounding the interrogation, but 'the ultimate inquiry is simply whether there [was] a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest." Stansbury v. California, supra at 322, quoting California v. Beheler, 463 U.S. 1121, 1125 (1983). As the Court explained, in United States v. Griffin, 922 F.2d. 1343, 1347 (8th Cir. 1990), "[i]f [the Defendant] believed his freedom of action had been curtailed to a 'degree associated with formal arrest,' and that belief was reasonable from an objective viewpoint, then [the Defendant] was being held in custody during the interrogation." See also, Stansbury v. California, supra at 322; United States v. Chamberlain, 163 F.3d 499, 502 (8th Cir. 1998).

Under the law of this Circuit, the relevant factors, which are to be considered in making a determination of custody, include an accused's freedom to leave the

scene, and the purpose, place, and length, of the interrogation. See, United States v. Griffin, supra at 1348-49. The most comprehensive list of factors was enumerated, as follows, in United States v. Griffin, supra at 1349:

> (1) whether the suspect was informed at the time of questioning that the questioning was voluntary, that the suspect was free to leave or request the officers to do so, or that the suspect was not considered under arrest; (2) whether the suspect possessed unrestrained freedom of movement during questioning; (3) whether the suspect initiated contact with authorities or voluntarily acquiesced to official requests to respond to questions; (4) whether strong arm tactics or deceptive stratagems were employed during questioning; (5) whether the atmosphere of the questioning was police dominated; or (6) whether the suspect was placed under arrest at the termination of the questioning.

See also, United States v. Ollie, 442 F.3d 1135, 1137 (8th Cir. 2006); United States v. Czichray, 378 F.3d 822, 827 (8th Cir. 2004), cert. denied, 544 U.S. 1060 (2005); United States v. Axsom, 289 F.3d 496, 500 (8th Cir. 2002).

The Court has regarded the first three (3) of the Griffin factors as mitigative in their effect upon the ultimate determination, for the presence, during the questioning, of one or more of those factors tends to weigh against a finding of custody. On the other hand, the remaining three (3) factors have been characterized as coercive in their effect, since those factors would tend to accentuate the existence of custody. Notably, the factors "are by no means exhaustive and should not be applied ritualistically, counting indicia which contribute to custody against those which detract." United

States v. Brave Heart, 397 F.3d 1035, 1039 (8th Cir. 2005), citing United States v. Czichray, supra at 827. Instead, the Griffin factors serve as a guide in the resolution of the ultimate inquiry of "whether the defendant was restrained as though he were under formal arrest." United States v. Czichray, supra at 828.

In addition to whether Miranda is implicated, the Supreme Court has recognized that, in order for a confession to be admitted into evidence, it must be voluntary if it is to satisfy the Fifth Amendment's right against self-incrimination. See, Dickerson v. United States, 530 U.S. 428, 433-34 (2000). For a confession to be considered voluntary, a Court must examine "'whether a defendant's will was overborne' by the circumstances surrounding the giving of a confession." Dickerson v. United States, supra at 434, citing Schneckloth v. Bustamonte, 412 U.S. 218, 226 (1973).

As the Supreme Court has explained:

> The due process test takes into consideration "the totality of all the surrounding circumstances -- both the characteristics of the accused and the details of the interrogation." [Schneckloth v. Bustamonte, 412 U.S. at 226.] See also Haynes [v. Washington, 373 U.S. 503, 513] (1963); Gallegos v. Colorado, [370 U.S. 49, 55] (1962); Reck v. Pate, [367 U.S. 433, 440] (1961)("[A]ll the circumstances attendant upon the confession must be taken into account"); Malinski v. New York, [324 U.S. 401, 404] (1945) ("If all the attendant circumstances indicate that the confession was coerced or compelled, it may not be used to convict a

> defendant"). The determination "depend[s] upon a weighing of the circumstances of pressure against the power of resistance of the person confessing." Stein v. New York, [346 U.S. 156, 185] (1953).

Id. at 434.

Among the circumstances, which are to be considered in this analysis are, first and foremost, whether a Miranda warning has been given, see, Withrow v. Williams, 507 U.S. 680, 693 (1993); any elements of "police coercion" or overreaching, see, Colorado v. Connelly, 479 U.S. 157, 163-164 (1986); the length of the interrogation, see, Ashcraft v. Tennessee, 322 U.S. 143, 153-154 (1944); the location of the interrogation, see, Reck v. Pate, 367 U.S. 433, 441 (1961); the continuous nature of the interrogation, see, Leyra v. Denno, 347 U.S. 556, 561 (1954); and the capacity of the defendant to resist pressure or exercise free will, see, United States v. Larry, 126 F.3d 1077, 1079 (8th Cir. 1997); see also, Withrow v. Williams, supra at 693 (listing the applicable considerations). Lastly, the Government has the burden of proving, beyond a preponderance of the evidence, that a statement was voluntary. United States v. Wright, 706 F.2d 828, 830 (8th Cir. 1983).

   2.  Legal Analysis. We have previously determined that the FBI's interview of Prentice, which was conducted on the same day as Johnson's questioning, conformed to the requisites of the Fifth Amendment, and we find no material

difference in the circumstances that attended the FBI's questioning of Johnson. See, Report and Recommendation of January 15, 2010, Docket No. 36, aff'd, Order Adopting Report and Recommendation dated February 4, 2010, Docket No. 53. Johnson appeared at the Juvenile Detention Center voluntarily -- albeit at the invitation of the Red Lake Police Department. See, e.g., United States v. Cates, 251 F.3d 1164, 1167 (8th Cir. 2001)(noting that the defendant voluntarily arrived at the interview unescorted, and left without hindrance as among the factors Court considering in finding that the defendant was not in custody); United States v. Galceran, 301 F.3d 927, 931 (8th Cir. 2002)(finding that the defendant's agreement to appear for questioning at a police station was not indicate of either police dominance or a custodial setting).

Johnson was informed, Ball testified without contradiction, several times, that she did not have to speak with the Agents, and that she was free to leave. See, United States v. Braveheart, supra at 1039 ("'[T]he most obvious and effective means of demonstrating that a suspect has not been taken into custody'" is "an express advisement that the suspect is not under arrest and that [her] participation in any questioning is voluntary."), quoting United States v. Czichray, supra at 826. While, here, Ball did not specifically testify that he informed Johnson that she was not under

arrest, that was the natural implication of his advisory that she was not obligated to talk to the Agents, and that she was free to leave. "An 'explicit assertion that the defendant may end the encounter * * * generally removes any custodial trappings from the questioning.'" United States v. Elzahabi, 557 F.3d 879, 884 (8th Cir. 2009), quoting United States v. Ollie, 442 F.3d 1135, 1138 (8th Cir. 2006). There is no suggestion that she asked for an attorney, that she was asked, but refused to answer, any question or set of questions, and there is no showing that she requested the questioning to stop.

While the length of her interview was not disclosed in Ball's testimony, there is no suggestion that Johnson was subjected to threats, or received any promises and, at the close of the questioning, Johnson left the Center, and was not arrested at that time. The interview occurred in a conference room, and not in a police headquarters, or jail, and the Center was unoccupied at the time of the interview. Id. ("The critical inquiry is not whether the interview took place in a coercive environment, but rather whether the defendant's 'freedom to depart was restricted in any way," United States v. LeBrun, 363 F.3d 715, 720, 723 (8th Cir. 2004)[en banc], cert. denied, 543 U.S. 1145 (2005), and, "where there is no clear indication that the defendant's freedom to depart is restricted, a police station interview is noncustodial.")

While Ball was armed, as was Iverson, Ball testified that their weapons were never unholstered, and there is no suggestion, in this Record, that any attention was drawn to those weapons. See, e.g., United States v. Cates, supra at 1167 (The fact that "[t]he officers were not in uniform and did not draw their weapons," added to the noncustodial nature of the defendant's questioning). Nor is there the slightest intimation that Johnson's freedom of movement was restrained, that she was handcuffed, or that she was denied any personal privilege that she requested. In a word, the Record does not reflect any circumstance other than that the interview was voluntary on Johnson's part.

While "'some degree of coercion is part and parcel of the interrogation process,' 'the coercive aspects of a police interview are largely irrelevant to the custody determination except where a reasonable person would perceive the coercion as restricting his or her freedom to depart.'" United States v. Brave Heart, supra at 1039-40, quoting United States v. LeBrun, supra at 721. In the end, "the 'only relevant inquiry' is whether a reasonable person in [Johnson's] position would have felt at liberty to end the interrogation and leave.'" Id. at 1038-39, quoting United States v. Czichray, supra at 826. We find and conclude, given the totality of the Record before us, that a reasonable person, who confronted the circumstances faced

by Johnson, "would have felt free to end the interrogation and leave." United States v. Elzahabi, supra at 883; see also, United States v. Bordeaux, 400 F.3d 548, 559-60 (8th Cir. 2005)("The crux of this question is whether, viewing the circumstances as a whole, a reasonable person in [Johnson's] position would have believed that law enforcement officers had limited his or her freedom of movement to a degree associated with formal arrest."), citing California v. Beheler, supra at 1125.

No deceptive stratagems, or tactics, were employed, and we understand Johnson as informing the Agents that she was willing to speak with them if that would help her daughter, who was allegedly injured on or about November 3, 2008, at the latest -- that is, only two (2) days before the interview. Similarly, the Record is without any showing that Johnson's will was overborne by the Agents, although the Record reflects that she was emotionally upset because her daughter was under a seventy-two (72) hour hold. Ball had formed the judgment that she was not under the influence of any mind-altering substance, and there is no showing that she failed to understand the questions put to her, or that she was unresponsive. Accordingly, on this Record, we find that the circumstances of the interview were not custodial, and that Johnson's agreement to participate in the questioning was a knowing and voluntary act on her

part. As a consequence, we recommend that Johnson's Motion to Suppress her statements be denied.

NOW, THEREFORE, It is --

RECOMMENDED:

1. That the Defendant's Motion to Dismiss for Preindictment Delay [Docket No. 43] be denied.

2. That the Defendant's Motion to Suppress Confessions or Statements in the Nature of a Confession [Docket No. 42] be denied.

Dated: February 5, 2010          *s/Raymond L. Erickson*
                                 Raymond L. Erickson
                                 CHIEF U.S. MAGISTRATE JUDGE

**NOTICE**

Pursuant to Rule 45(a), Federal Rules of Criminal Procedure, D. Minn. LR1.1(f), and D. Minn. LR72.1(c)(2), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties **by no later than February 19, 2010**, a writing which specifically identifies those portions of the Report to which objections are made and the bases of those objections. Failure to comply with this procedure shall operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.

If the consideration of the objections requires a review of a transcript of a Hearing, then the party making the objections shall timely order and file a complete transcript of that Hearing **by no later than February 19, 2010**, unless all interested parties stipulate that the District Court is not required by Title 28 U.S.C. §636 to review the transcript in order to resolve all of the objections made.